Before the First Division, November 4, 1954

**No. 58467.**—Han Binzer Music House and Ad. M. Schmid & Co. *v.* United States, protest 222341–K (New York).

Oliver, Chief Judge:   This case relates to certain musical instruments that are described on the invoice as "1 Clavichord Modell '33'," and "1 Cembalo Modell 'Cristofori'," which the collector considered as stringed instruments. They were classified under the provision in paragraph 1541 (a) of the Tariff Act of 1930, for "Musical instruments, and parts thereof, not specially provided for," with a duty assessment at the rate of 40 per centum ad valorem.   Plaintiffs claim that the merchandise is properly classifiable either under the provision for "pianos" in paragraph 1541 (a) of the Tariff Act of 1930, as modified by T. D. 52739, or as percussion instruments under paragraph 1541 (a), as modified by T. D. 51802, supplemented by T. D. 51909.   The dutiable rate under both of the said provisions is 20 per centum ad valorem.

The importer of the present merchandise, who, for 20 years, has been a dealer and importer of musical instruments, stated that "Cembalo" is a German word for "harpsichord," and that the two instruments under consideration are, in fact, a clavichord and a harpsichord, which he has sold under their respective names all over the United States throughout his entire experience.   The witness' testimony is directed entirely toward showing the similarities of the two instruments in question and the piano.   His testimony establishes that the clavichord, the harpsichord, and the piano are keyboard instruments.   All employ keys that actuate so-called "hammers" which strike metal strings tuned to a definite pitch to produce musical tones.   The distinction between the clavichord and the harpsichord is in the manner in which the "hammers" operate and strike the strings in the two different instruments.   In the clavichord, the strings are struck

directly in the center. In the harpsichord, the strings are struck on the side with the edge of the "hammer." This phase of the witness' testimony was elicited through questioning by the court, and appears in the record as follows (R. 18–20):

CHIEF JUDGE OLIVER: I think I may safely say this: Both these instruments produce their sound by means of strings, do they not?

THE WITNESS: Yes.

CHIEF JUDGE OLIVER: Both of them employ the keyboard?

THE WITNESS: Yes, like the piano.

CHIEF JUDGE OLIVER: Both of them produce their musical sound, or note, or tone, by striking the keyboard, is that correct?

THE WITNESS: Yes.

\*         \*         \*         \*         \*         \*         \*

CHIEF JUDGE OLIVER: In one case [the clavichord] a hammer or tangent hits the string——

THE WITNESS: Direct on the edge.

\*         \*         \*         \*         \*         \*         \*

CHIEF JUDGE OLIVER: Whereas the harpsichord produces its sound by striking the note on the keyboard of the instrument; the internal mechanism carries that impulse past the string, and in that process from lower to upper it brushes or strikes?

THE WITNESS: Yes, the edge of the hammer hits the strings and produces sound.

CHIEF JUDGE OLIVER: And goes beyond it? It doesn't hit in the center?

THE WITNESS: That is right.

CHIEF JUDGE OLIVER: Both of these instruments are musical instruments?

THE WITNESS: Yes.

There was received in evidence a paper, titled "Evolution of the Piano Action" (plaintiffs' illustrative exhibit 5), which the witness characterized as "the whole history of the clavichord, harpsichord, and modern piano, the evolution." Included therein are pictorial illustrations and descriptions of the clavichord and the harpsichord. The descriptions thereof are as follows:

CLAVICHORD, GERMAN, CIRCA 1533

A direct descendant of the Monochord. Usually four octaves, its keys were fitted with blades of brass called "tangents" to strike the string and divide it producing at the same time tone and pitch. Clavichords had a soft, hesitating tone.

HARPSICHORD, ITALIAN, CIRCA 1680

The most important keyed instrument of the 18th Century, in form and arrangement resembling a grand piano. Usually of four to five octaves with two or three strings to each note. A jack and quill action gave individuality of tone, some power, but lacking in expressive character thru touch. Used more in the orchestra than as a solo instrument.

Plaintiffs also introduced the testimony of a professional harpsichordist, who, since 1951, has been the head of the harpsichord department of the Juilliard School of Music. His testimony, concerning the basic characteristics of the clavichord, the harpsichord, and the piano, is corroborative of that offered by the previous witness. He testified, further, that the keyboard of the harpsichord, being narrower, has 1½ octaves fewer than the piano keyboard. Asked whether the piano is a stringed instrument, the witness gave the following indefinite answer (R. 25):

It is very difficult for me as a musician to answer that directly, because in the music business we do not consider keyboard instruments stringed instruments,

and just because the strings are struck with objects resulting from the attack on the keyboard, we do not consider them percussion instruments. Nobody in the music business talks about pianos as percussion instruments.

The witness' statement that the clavichord and the harpsichord are not included either in the percussion or the string section of an orchestra, but are located in the keyboard instrument grouping, has no bearing on the issue before us. The orchestral classification of musical instruments is wholly immaterial to their tariff classification. *United States* v. *L. Oppleman, Inc.*, 28 C. C. P. A. (Customs) 298, C. A. D. 158.

Plaintiffs' principal claim, alleging classification for the clavichord and the harpsichord under the provision for "pianos," is based on the theory that these musical instruments function by "piano action," and that they, as keyboard instruments, are members of the "piano family."

It is a matter of common knowledge that there are different models or types of pianos, i. e., the concert grand, the baby grand, square, and upright. While all of those styles or models would be classifiable under the *eo nomine* designation for "pianos," in paragraph 1541 (a), as modified, *supra*, there is nothing about that unqualified provision to broaden its scope so as to include therein other keyboard instruments. The clavichord and the harpsichord, as shown by the record before us, possess certain identifying qualities that definitely establish each to be a separate and distinct musical instrument. The clavichord has "a soft, hesitating tone"; the harpsichord lacks "expressive character thru touch," and is used "more in the orchestra than as a solo instrument" (plaintiffs' illustrative exhibit 5, *supra*).

The individual characteristics of the piano, the clavichord, and the harpsichord are emphasized in dictionary definitions. Webster's New International Dictionary (2d edition, 1950) contains a series of pertinent definitions, set forth in plaintiffs' brief as follows:

Piano, n. *Music.* A stringed instrument of percussion, giving its tones from steel wires which are struck by felt-covered hammers operated from a keyboard * * *.

Clavichord, n. *Music.* A keyboard instrument in common use before the invention of the piano. Its horizontal strings were struck by small brass tangents operated by the keys, the point of contact in each case determining the vibrating length of the string and therefore its pitch. A vibrato, or pulsation in the tone, was made by varying pressure on the key.

Harpsichord, n. *Music.* A harp-shaped wire-stringed keyboard instrument, the immediate precursor of the piano, in use from the sixteenth to the eighteenth century, and resembling in form and arrangement the grand piano, but producing its tones by the plucking of its strings by quill or leather points, set in jacks which were operated from the keyboard. * * *

It follows from all of the foregoing that the clavichord and the harpsichord are musical instruments, individually identifiable as such, through singular or peculiar attributes associated with the respective instruments. Plaintiffs' claim for classification thereof under the provision for pianos, in said amended paragraph 1541 (a), is overruled.

Our consideration now turns to the alternative claim for classification of these musical instruments as percussion instruments, under paragraph 1541 (a), as modified, *supra*. In disposing with this phase of the case, the characteristics that are common to the piano, the clavichord, and the harpsichord have much significance. All employ keys that actuate hammers or so-called "tangents" to strike wire strings for the production of musical tones. The predominant feature in all of the instruments is the use of strings to produce music.

Our decision in the case of *Langfelder, Homma & Carroll, Inc.* v. *United States*, 32 Cust. Ct. 281, C. D. 1614, is important to the present discussion, particularly as it involved determination of whether a piano is a stringed instrument. Al-

though the primary issue in the cited case was materially different from that now before us, what was said therein concerning stringed instruments and percussion instruments has application herein. Accordingly, we repeat the line of reasoning followed therein. The cited case, like the present case, is not based on commercial designation; hence, common meaning prevails. In our decision therein, we referred to several definitions as follows:

* * * The word "instrument," in the field of music, is comprehensively defined in Webster's New International Dictionary as follows:

> **instrument** * * * **3.** A contrivance by which musical sounds are produced. Musical instruments may be classified, according to the nature of the vibrating body that initiates the sound, as stringed, wind, and percussion. In *stringed instruments* it is a group of tense strings, either bowed, as in the violin and its class; plucked, as in the harp, guitar, and mandolin; *struck, as in the piano* [italics supplied]; or blown upon, as in the aeolian harp. * * * *Percussion instruments* may be subdivided according as the tone-producing surface is a membrane, as in drums; a plate, as a cymbal or bell; or a rod or bar, as a triangle or xylophone.

It will be observed that under the foregoing definitions the piano is a stringed instrument.

Funk & Wagnalls New Standard Dictionary defines "stringed instruments" as those "in which the sound is due to the vibration of a string or wire, usually reinforced by the resonance of a sounding-board or the like, including * * * (c) the *pianoforte*, whose strings are vibrated by percussion." The same authority defines "percussive instruments" as those "used now chiefly for accentuation, as the drum and cymbals, for signals, as the bell, or as curiosities, as the xylophone. An exception is the pianoforte [piano], which is *both stringed and percussive.*" [Last italics added.] "Pianoforte" is defined as "A percussive stringed musical instrument, a later and improved form of the harp, harpsichord, and clavichord, in which sounds are produced by hammers, set in motion by keys and a connected keyboard, striking on wire strings."

Based upon the above definitions, as they were set forth in the *Langfelder, Homma & Carroll, Inc.*, case, *supra*, we held in that case that the piano is a stringed instrument, and, in doing so, stated as follows:

Under the foregoing definitions, the piano is essentially and primarily a stringed instrument. Music produced therefrom comes from the vibrations of strings tuned to proper pitch. The percussive phase refers to the function of different parts which coordinately act upon the strings that initiate the musical tones. The piano is characterized by the strings. * * *

That language is equally appropriate in determining the tariff classification of the clavichord and the harpsichord under consideration. Accordingly, and for all of the reasons hereinabove set forth, we hold these instruments to be stringed instruments. Since, however, there is no specific provision for stringed instruments, we, therefore, hold the clavichord and the harpsichord in question to be properly classifiable under the residuary provision in paragraph 1541 (a) of the Tariff Act of 1930 for "Musical instruments, and parts thereof, not specially provided for," as assessed by the collector.

The protest is overruled and judgment will be rendered accordingly.